UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

CHRISTOPHER JERRY, :
:
      Plaintiff, : CASE NO. 1:09-CV-2079
:
   v. : OPINION & ORDER
: [Resolving Doc. 37; Doc. 43; Doc. 45.]
LAKE COUNTY/BOARD OF COUNTY :
COMMISSIONERS, *et al.*, :
:
      Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    In this civil rights action arising out of Plaintiff Christopher Jerry's 2008 arrest and detention in Painesville, the defendants (Lake County Sheriff Daniel Dunlap, the Lake County Board of Commissioners, and the City of Painesville) move for summary judgment. [Doc. 43; Doc. 45.] For the reasons below, the Court **GRANTS** the defendants' motions.

    When Jerry reported to the Painesville Probation Department in September 2008 for his monthly drug test—a condition of his probation following earlier drug possession charges—he was unable to produce a urine sample. [Doc. 50-3 at 51-55.] Consequently, he alleges, Painesville police officers handcuffed him, kicked him, beat him, tased him, and placed him in a holding cell pending transportation to the Lake County jail. [Doc. 50-3 at 56-60.] As a result of this skirmish, Jerry was later found guilty of resisting arrest. [Doc. 43-3 at 2.]

    After Painesville police officers transported him to the Lake County jail, Jerry claims that Lake County police officers repeatedly abused him—kicking and striking him; stripping him naked; placing him in a straightjacket; and denying him food, water, and medical and mental health

Case No. 1:09-CV-2079
Gwin, J.

treatment. [Doc. 50-3 at 63-66, 70-73, 75, 77, 80.]  Because the Lake County police officers used force to subdue Jerry, they prepared an incident report that Lake County Sheriff Daniel Dunlap reviewed, ultimately concluding that the force they used was reasonable and necessary.  [Doc. 45-4 at 1-2.]

After his release from prison three days later, Jerry brought this action.  He asserts the following claims: (1) a claim under 42 U.S.C. § 1983 for excessive force against Sheriff Dunlap in his individual capacity; (2) § 1983 claims against unidentified John Does; (3) § 1983 claims for failure to train or supervise against the City of Painesville, Lake County, and Sheriff Dunlap in his official capacity; (4) Ohio tort claims against the City of Painesville, Lake County, and Sheriff Dunlap in his official capacity; and (5) an Ohio tort claim against Sheriff Dunlap in his individual capacity.[1/]  [Doc. 16.]

Viewing the evidence in the light most favorable to Jerry, and drawing all reasonable inferences in his favor, his claims nevertheless fail.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (on summary judgment motion, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").

First, Jerry's § 1983 excessive force claim against Sheriff Dunlap fails on qualified immunity grounds.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (qualified immunity inquiry requires court to ask, *inter alia*: "Taken in the light most favorable to the [plaintiff], do the facts alleged show the

---

[1/] Jerry also asserted § 1983 claims against the City of Painesville Probation Department and Municipal Court. Because the Probation Department and Municipal Court are not *sui juris*—that is, entities that can sue and be sued—the Court **GRANTS** their motion to dismiss. [Doc. 37.] *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("[T]he Police Department is not an entity which may be sued . . . .") (citing cases).

Case No. 1:09-CV-2079
Gwin, J.

officer's conduct violated a constitutional right?"), *abrogated on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009). A plaintiff may not maintain a § 1983 claim against a state official on the basis of *respondeat superior*. See *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, supervisory liability under § 1983 is available only when the official "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

Here, the only evidence of Sheriff Dunlap's direct participation in Jerry's treatment is that he reviewed the incident report and concluded that the officers' use of force was reasonable. [Doc. 45-4 at 1-2.] Reaching that conclusion from the report's factual details does not "shock[] the conscience"—the standard for maintaining a Fourteenth Amendment excessive force claim.[2/] *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). According to the report, Jerry was "highly uncooperative" when he arrived at the Lake County jail, "refused to comply with verbal orders," and "banged his head on the intake counter twice[,] causing a small laceration in his right eyebrow area." [Doc. 45-4 at 5.] During the altercation, one of the Lake County police officers received a cut on his arm. [Doc. 45-4 at 5.] As a result, Lake County officers physically restrained Jerry "for his own safety and the safety of officers." [Doc. 45-4 at 5-6.] No reasonable jury could find—based on the facts in the report—that Sheriff Dunlap's conclusion that it was reasonable for the officers to physically restrain Jerry was "arbitrary" or "shocked the conscience." *County of Sacramento*, 523

---

[2/]Because Jerry was a pretrial detainee during Sheriff Dunlap's involvement with him, his excessive force claim arises under the Fourteenth Amendment, not the Fourth or Eighth Amendments. See *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("[T]he Fourteenth Amendment's Due Process Clause . . . 'protects a pretrial detainee from the use of excessive force that amounts to punishment.' By contrast, convicted prisoners may bring excessive-force claims under the Eighth Amendment, and 'free citizen[s]' may bring such claims under the Fourth Amendment.") (citations omitted).

Case No. 1:09-CV-2079
Gwin, J.

U.S. at 846 (citations and internal quotation marks omitted). Thus, qualified immunity bars Jerry's § 1983 claim against Sheriff Dunlap.

Second, Jerry's only other § 1983 claims against individual defendants are against unidentified John Doe officers of the Painesville and Lake County police departments. Despite several months and extensive opportunity for discovery, Jerry has not named or served any of these officers. Thus, Federal Rule of Civil Procedure 4(m) dictates that Jerry's claims against them be dismissed with prejudice. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

Third, Jerry's *Monell* claims against the City of Painesville, Lake County, and Sheriff Dunlap in his official capacity fail as a matter of law because Jerry has not adduced any evidence of an unconstitutional municipal policy or custom that caused his injuries. *See Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Importantly, to succeed on a *Monell* claim, a plaintiff must show "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). Jerry has failed to make this showing.

With respect to Painesville, Jerry has introduced no evidence of any city policy authorizing

Case No. 1:09-CV-2079
Gwin, J.

officers to beat or tase probationers who cannot immediately produce a urine sample. Nor has Jerry introduced evidence of any Lake County or Sheriff Dunlap policy authorizing officers to kick or strike cooperative pretrial detainees or to deny them food, water, or medical or mental health treatment. To the contrary: the only evidence of Lake County policies indicates that they are constitutionally ample. First, Lake County's officer-force policy restricts the use of force to situations "when it becomes necessary in self-defense from an assault by an inmate, in defense of third person from assault by an inmate, to control or subdue an inmate who refuses to obey the jail rules governing the inmate's conduct and to prevent self-inflicted harm"—and even then, the force "should not exceed that necessary to overcome the resistance." [Doc. 45-7 at 4.] Officers who do use force must complete an incident report for supervisors to review. [Doc. 45-7 at 4.] Second, Lake County's inmate-restraint policy prohibits the use of restraints as punishment and requires close monitoring once imposed. [Doc. 45-7 at 13.] Finally, Lake County's inmate-mental-health policy dictates that "[p]risoners evidencing signs of mental illness or developmental disability shall be referred immediately to qualified mental health personnel." [Doc. 45-7 at 15.] Moreover, no evidence indicates that Lake County's training on these policies was deficient. Thus, Jerry's *Monell* claims fail as a matter of law.

Fourth, Ohio Revised Code § 2744.02(A)(1) bars Jerry's state law claims against the City of Painesville and Lake County. *See* Ohio Rev. Code § 2744.02(A)(1) (subject to exceptions not applicable here, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function"); *see also* Ohio Rev. Code § 2744.01(C)(2)(h) (defining "operation of jails" as governmental

Case No. 1:09-CV-2079
Gwin, J.

function).

Fifth and finally, Ohio law likewise bars Jerry's state law claims against Sheriff Dunlap.  To the extent that Jerry's claim is against Dunlap in his official capacity, that claim fails for the same reason as his state-law claim against Lake County.  Lambert v. Clancy, 927 N.E.2d 585, 590 (Ohio 2010) (holding that Ohio Rev. Code § 2744.02(A)(1)'s immunity extends to officeholders sued in official capacity).  To the extent that Jerry's claim is against Dunlap in his individual capacity, Ohio law immunizes a political subdivision employee from liability unless his acts were "manifestly outside the scope of the employee's employment or official responsibilities" or "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Revised Code § 2744.03(A)(6)(a)-(b).  Neither exception applies here.  First, Sheriff Dunlap's official responsibilities include reviewing incident reports to determine the reasonableness of subordinate officers' use of force. [Doc. 45-4 at 1-2; Doc. 45-7 at 3-10.]  Second, Jerry has adduced no evidence that Dunlap reviewed the incident report with malicious purpose, in bad faith, or in a wanton or reckless manner.  [Doc. 45-4 at 1-2.]  Thus, Jerry's state law claims against Dunlap fail.

For the foregoing reasons, Jerry's claims fail as a matter of law.  Accordingly, the Court **GRANTS** the defendants' summary judgment motions and motion to dismiss.  [Doc. 37; Doc. 43; Doc. 45.]

IT IS SO ORDERED.

Dated: July 31, 2010                                s/         *James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE